**AJELLO v. PAN–AMERICAN AIRWAYS CORPORATION et al.**

**No. 246.**

Circuit Court of Appeals, Second Circuit.

May 22, 1942.

Tiberius De Marinis, of New York City, for appellant.

Drury W. Cooper, and C. Blake Townsend, both of New York City, for Pan-American Airways Corporation.

Hoguet, Neary & Campbell, of New York City (Walter H. Free, of New York City, R. Welton Whann, of Los Angeles, Cal., and J. Edwin Coates, of Santa Monica, Cal., of counsel), for Douglas Aircraft Company, Inc.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

PER CURIAM.

The plaintiff does not profess to have been the first to invent a hinged braking and lifting "flap" attached to the wing of an aeroplane, and in view of the prior art he would have been wholly unwarranted in doing so, for such contrivances had become common before his filing date. Piau, French Patent No. 441,523 (1912); Lewkowicz, No. 1,238,031 (1917); Fairey, No. 1,359,345 (1920); Handley-Page, No. 1,-422,616 (1922); Wright, No. 1,504,663 (1921—filing date); Zimmermann, No. 1,-697,674 (1921—filing date). The use of the propeller "airblast" to add to the lift was also disclosed in Zahm No. 1,401,934 (1921); and, although that was in a "hovering" plane in which the purpose was to rise quickly (as a helicopter rises by its horizontal propeller) Ajello's use of it was

functionally exactly the same; i.e., to add to the lift at the start. Moreover, the feature was a late afterthought, added to the specifications merely as a feature of operation, and disclosed only diagrammatically in the drawings, which incidentally show less than one-tenth of the "flap" as exposed to the blast. Thus three of the four elements upon which the plaintiff relies were in fact anticipated; there remains only the "minimum or limited surface area" (page 1, lines 31, 32), likewise an afterthought added more than a year after filing.

 We therefore share the judge's doubt whether valid claims could have been granted for the four elements which Ajello has culled out of his specifications as his invention in entire disregard of the claims which he actually obtained. But we need not answer that question, for claims that he might have got but did not are irrelevant; we may not ignore all that took place in the Patent Office, and grant him what the prior art might have permitted. A patentee makes his own bargain; he demands what he thinks to be the just measure of his contribution; and he abandons to the public all that he does not reserve in his claims. Even in the case of "pioneer" inventions—and this was not of that kind— we do not disregard the claims altogether, though we are not confined to their terms. To cover the supposedly infringing planes we should have to strike out the structural details which limit all the claims and add other elements to save what remained. Consider what would be necessary, for example, to make the defendants infringe claim eight itself. Even though we assumed that their planes were covered by the phrase, "braking and lifting surface normally forming part of the streamline of the wing and connected thereto by means of hinges at one end," by no possibility could we say that their "flaps" have "sliding connections at the other" end from their "hinges," or "an arm pivoted within the nucleus of the wing." Thus we should have to start by deleting the whole of the claim after the words, "at one end"; and the truncated remainder would be invalid, because braking and lifting "flaps" were old, as we have seen. In order to save it we should then have to interpolate two elements from the specifications: (1) "Limited surface area"; (2) "air blast by motor propelling means." We have already said that the second of these had already appeared in Zahm where its function was described. If that be deemed too remote because it was in a "hovering" plane, Zimmermann's "flap" was described as extending "the full length of the wing or any part of it, but is preferably coextensive with each wing" (p. 2, lines 72-74). Fairey and Wright also show "flaps" closely embracing the fuselage. We do not say that these would inevitably be complete anticipations of this element, but they certainly throw doubt upon whether the Patent Office would have allowed any claim which depended upon it; and at all events they deny the claim any wide latitude. As to the "limited surface area," we have no reason to suppose that the Patent Office would have granted a claim for the combination of that element and a "flap"; and even if we had, we cannot dispense with the necessity of trying that question out in the application. As the patent stands, Ajello abandoned that combination; and if he was in error about the scope of his invention, his only remedy was by reissue; the district court had no power to deal with the question. All he got and all he asked for was a limited specific structure, a species of an already well known device, which with the passage of time his mind has apparently transmuted into a "revolutionary" invention. So to read the claims would do more than twist them like "a nose of wax"; it would be a major feat of plastic surgery.

Judgment affirmed.